IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FARUQ WASHINGTON,

        *Plaintiff*,

   v.

ROSCOE BROWN, et al.,

        *Defendants*.

CIVIL ACTION
NO. 16-02955

**PAPPERT, J.**                                                                                 May 5, 2017

## **MEMORANDUM**

      Plaintiff Faruq Washington, who is legally blind, was arrested and charged with criminal mischief and disorderly conduct as the result of an interaction with Roscoe Browne,[1] a bus driver for the Southeastern Pennsylvania Transportation Authority ("SEPTA"). After the criminal charges against him were dropped, Washington sued Browne for malicious prosecution. He also sued unnamed SEPTA or Philadelphia police officers for malicious prosecution, false arrest and use of excessive force. He claims that the police violated his constitutional rights during his confinement and that they also committed assault and battery and false light invasion of privacy. Finally, Browne asserted *Monell* claims against the City of Philadelphia and SEPTA.

      The City filed a motion to dismiss the *Monell* claims against it. SEPTA and Browne filed a motion to dismiss the *Monell* claims against SEPTA and the malicious prosecution claim against Browne. Washington subsequently abandoned his *Monell* claims. The Court accordingly grants the City's motion in its entirety and grants

---

[1]     Browne's name is misspelled in the caption. *See* (ECF No. 19, at 1 n.1).

1

SEPTA's motion with respect to the *Monell* claims against it. For the reasons below, however, the Court denies SEPTA's motion to dismiss the malicious prosecution claim against Browne in his individual capacity.

I.

Faruq Washington is legally blind.[2] (Compl. ¶ 9, ECF No. 3.) On August 12, 2015, he boarded a SEPTA bus driven by Browne at 22nd and Chestnut Streets. (*Id.* ¶ 10.) When Washington boarded the bus, he had his cane in one hand and a bag of groceries in the other. (*Id.* ¶ 11.) He was also wearing dark sunglasses, as he routinely does. (*Id.*) Washington contends he politely told Browne that he was blind and needed to travel to 69th and Market Streets and requested that Browne let him know when the bus reached that stop. (*Id.* ¶ 12.) Washington then heard someone he believed to be Browne make a comment to other passengers to the effect that Washington was not blind because of the way he was moving. (*Id.* ¶ 13.) Washington responded that he was blind and sat near the front of the crowded bus. (*Id.* ¶14.) Washington then repeated to Browne where he needed to go. (*Id.* ¶ 15.) Because Browne did not respond to his request, Washington asked another passenger to let him know when the bus reached his stop. (*Id.* ¶ 15.) Browne told Washington not to ask "his passengers" for assistance. (*Id.* ¶ 16.)

At this point, Browne's conduct alarmed Washington and caused him to fear that he would be left stranded somewhere and would not know where he was. (*Id.* ¶ 17.) Washington requested to get off the bus immediately. (*Id.*) He contends Browne

---

[2] Washington also allegedly suffers from Post-Traumatic Stress Disorder as the result of being subjected to false arrest and excessive force at the hands of Philadelphia police officers when he was a teenager. In 2007, when police responded to a domestic disturbance involving Washington's mother and a neighbor, a group of officers allegedly tackled Washington and tasered his neck, causing him to lose consciousness. (Compl. ¶ 9.)

2

refused to stop the bus to let him off and made a comment to the effect that he could not handle Washington. (*Id.* ¶ 18.) Panicked, Browne got out of his seat to get off the bus and attempted to reach the exit by feeling his way along the bus windows, all while carrying his belongings. (*Id.* ¶ 19.) The bus was still moving, however, and while it is not entirely clear from the Complaint, it appears that Washington may have been "tossed about" as he attempted to make his way to the exit. (*Id.*) Though it is unclear from the pleadings if the bus sustained any damage as a result of this incident,[3] Washington contends that "[a]t no time did [he] plan to damage the bus, in his attempt to get off the bus." (*Id.* ¶ 21.) Washington also claims that Browne's treatment of him alarmed other passengers, who told Browne that Washington was blind and to let him off the bus. (*Id.* ¶ 20.)

Browne stopped the bus at 23rd and Market Streets. (*Id.* ¶ 22.) Washington claims that Browne then called either SEPTA police officers or Philadelphia police officers to have Washington arrested. (*Id.*) According to Washington, Browne told the

---

[3] *See* (ECF No. 3, ¶ 21; ECF No. 14-1, at 13; ECF No. 17, at 5). In his response, Washington states: "Although it is factually unknown how or if there was any damage to the bus, plaintiff pled that he did not intend to damage the bus because he was charged with damaging it." (ECF No. 17, at 5.) Browne's testimony from the preliminary hearing, referenced briefly in Washington's Complaint and the transcript of which is attached to Defendant's reply, suggests that the bus sustained a broken window as a result of the incident. *See* (ECF No. 19, at 3–4, Ex. A). Browne contends that Washington's Complaint "explicitly relied upon" Browne's testimony from the preliminary hearing such that the Court can appropriately consider it. (ECF No. 10, at 3.) In deciding motions under Rule 12(b)(6), courts may consider "document[s] *integral to or explicitly relied upon* in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Washington's Complaint, however, merely states: "At the preliminary hearing, defendant Browne testified under oath that he did not believe that plaintiff had intended to damage the bus – intent is a required element for both criminal mischief and disorderly conduct." (ECF No. 3, ¶ 33.) This brief reference does not render the full transcript of Browne's testimony at the preliminary hearing "integral to or explicitly relied upon." Washington's malicious prosecution claim is based not on the content of Browne's testimony at the preliminary hearing, but rather on the allegedly false and malicious allegations Washington contends Browne communicated to the police on August 12, 2015. *See* (ECF No. 3, ¶¶ 31, 34, 41). The Court therefore will not consider the transcript for purposes of its analysis under Rule 12(b)(6).

3

police that Washington had committed a crime despite knowing that Washington had not done so, that any damage to the bus had occurred accidentally (and as a result of Washington's desperation to get off the bus) and that Washington had not intended to cause any type of disruption to the bus route or other passengers. (*Id.* ¶ 23.) Washington also claims that Browne knew he was somewhat hysterical from Browne's taunting him and refusing to let him depart. (*Id.*)

As Washington walked away from the bus stop, several police officers approached him, told him to put his hands up, forcefully searched him, grabbed and twisted his arms, handcuffed him, pushed him against a wall and made him sit with his head angled to the ground. (*Id.* ¶ 24.) According to Washington, numerous SEPTA passengers witnessed this and were "protesting [Washington's] arrest" and "telling [the police officers] that [Washington] had not done anything wrong [and] that any damage to the bus was an accident, based on his desperation to get off the bus because defendant Browne was harassing him, and he became fearful." (*Id.* ¶ 42); *see also* (*id.* ¶ 36). Washington contends, however, that the police officers did not engage with the passengers and "refused to do even the most superficial investigation to find out what had occurred before intentionally manhandling [Washington], arresting him, and starting the process toward prosecution." (*Id.* ¶ 35.) One of the officers commented that Washington was not blind and "to hell with him."[4] (*Id.* ¶ 26.) Washington was then taken to a precinct and placed in a jail cell. (*Id.* ¶ 28.)

Washington contends that police officers threw out his food, confiscated his cell phone and broke his sunglasses, though he is unsure whether this was done by the

---

[4] Washington contends that he has been stopped and detained by Philadelphia police officers several times in the past on the premise that they did not believe he was blind. (*Id.* ¶ 27.)

4

officers who arrested him or those at the precinct. (*Id.* ¶ 29.) He also claims that though he informed officers at the precinct that his kidney disease required him to follow a special herbal diet and that he could not eat the food they served him, the officers did not make an accommodation. (*Id.* ¶ 30.) As a result, Washington did not eat until he was released the following afternoon. (*Id.*)

Initially, Washington was charged with two misdemeanors: criminal mischief and disorderly conduct. (*Id.* ¶ 31.) Prior to his first court appearance, however, Washington contends that the Philadelphia District Attorney upgraded the criminal mischief charge to a felony count based on information provided by Browne or SEPTA. (Compl. ¶ 31.) This carried a possible prison sentence of 7 years and a $15,000.00 fine. (*Id.* ¶ 31.) At the preliminary hearing on November 4, 2015, Browne was the only witness called by the prosecution. (Pl.'s Resp., at 7, ECF No. 17.) Based on the evidence presented at that hearing, the Court dismissed all of the charges against Washington. (Compl. ¶ 45.)

In sum, Washington was arrested on August 12, 2015, detained in a jail cell for one night and remained under legal process from August 13, 2015, when he was arraigned and released, until his preliminary hearing on November 4, 2015. (*Id.* ¶ 32.) After the charges were dropped, Washington filed this lawsuit. The City filed a motion to dismiss on October 7, 2016; Browne and SEPTA filed a motion to dismiss on October 17, 2016. (ECF Nos. 13 & 14-1.) In his November 14, 2016 response to the motions, Washington stated that he is no longer pursuing the *Monell* claims against the City and SEPTA. (ECF No. 17, at 18–19.) The Court's analysis therefore focuses on whether Washington's allegations against Browne are sufficient to survive under Rule 12(b)(6).

II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (citations and alterations omitted); *see Iqbal*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted).

Under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. *See Connelly*, 809 F.3d at 787. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## III.

Washington brings his malicious prosecution claim against Browne under § 1983. To establish a *prima facie* case under § 1983, he must first demonstrate that a person acting under color of state law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Washington must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); see also *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). SEPTA and its employees are subject to suit under § 1983 and, in this situation, Browne was acting in his official capacity and in furtherance of his official duties. He was therefore acting under color of state law. *See Burnette v. City of Philadelphia*, No. 13-0288, 2013 WL 1389753, at *5 (E.D. Pa. Apr. 5, 2013); *Reynolds v. Se. Pennsylvania Transp. Auth.*, No. 12-1008, 2013

7

WL 3939513, at *2 (E.D. Pa. July 31, 2013); *Pokalsky v. Se. Pennsylvania Transp. Auth.*, No. 02-323, 2002 WL 1998175, at *3 (E.D. Pa. Aug. 28, 2002).

## A.

Though Washington's Complaint references both the Fourth and Fourteenth Amendments, *see* (Compl. ¶¶ 1, 40), the Court analyzes his claim under the Fourth Amendment, consistent with the Supreme Court's holding in *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (holding that a party claiming malicious prosecution cannot rely on a substantive due process theory; rather, "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged"). To prevail on a Fourth Amendment malicious prosecution claim, Washington must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

### i.

Washington must first show that Browne initiated a criminal proceeding against him. *Johnson*, 477 F.3d at 81–82. Though prosecutors are typically responsible for initiating such proceedings, other government actors can also be considered to have initiated a criminal proceeding by virtue of their involvement in providing information to the prosecutor or the arresting police officers. *See Gallo v. City of Philadelphia*, 161 F.3d 217, 220 n.2 (3d Cir. 1998), *as amended* (Dec. 7, 1998) ("Decisions have 'recognized

8

that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities.'" (citing 1A MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, SECTION 1983 LITIGATION, § 3.20, at 316 (3d ed. 1997))); *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005).

In *Vanderklok v. United States*, No. 15-00370, 2016 WL 4366976, at *10 (E.D. Pa. Aug. 16, 2016), Kieser, a TSA screening supervisor, called a police officer and told him that Vanderklok had made a bomb threat while going through airport security. Based on Kieser's allegation, Vanderklok was escorted to the police department and charged with disorderly conduct, placement of a bomb and terroristic threats. *Id.* at *2. Vanderklok sued Kieser for malicious prosecution, claiming that Kieser's statement to the police was false and he had never made the bomb threat. *Id.* at *10. Kieser argued that Vanderklok could not show that Kieser initiated the proceedings against him "because his arrest and prosecution were based on the independent decisions of Philadelphia Police Department supervisors, detectives, and the Philadelphia District Attorney's Office." *Id.* The court rejected this argument and held that Kieser could nevertheless be deemed to have initiated the proceeding:

> It is settled law that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions. . . . If the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution.

*Id.* (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)).

9

Likewise, in *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir. 2000), the plaintiff brought a malicious prosecution claim against a school district, the district superintendent and the school principal, who she alleged contacted the police, provided false or misleading information to them suggesting she was guilty of stealing and requested she be prosecuted. The Court held that:

> The action of the School District in initiating the criminal proceedings and pressing unfounded criminal charges against Merkle can render the District liable for its major role in a malicious prosecution. . . . [the Police Detective] acted only on what Principal Thomas told him. As instigators of the arrest, however, it is possible that the District and [the Superintendent] were in possession of additional information, not provided to Detective Hahn, that would negate any probable cause they may otherwise have had to prosecute Merkle.

*Id.* at 791.

Thus, Browne, a government official under the law, *see Ascolese v. Se. Pa. Transp. Auth.*, 925 F. Supp. 351, 361 (E.D. Pa. 1996), can be liable for malicious prosecution if he "influenced or participated in the decision to institute criminal proceedings." *Vanderklok*, 2016 WL 4366976, at *10.

Like the defendants in *Vanderklok* and *Merkle*, Browne of his own accord contacted the police officers about Washington for the purpose of having him arrested. (Compl. ¶ 22.) Then, at Browne's direction and based on what he communicated to them, the police officers came to the scene, arrested Washington without any further investigation and charged him with criminal mischief and disorderly conduct. (*Id.* ¶¶ 22, 27, 31, 35.) One can be arrested and charged with criminal mischief if there is probable cause to believe that he or she "intentionally damage[d] real or personal property of another." *See* 18 PA. CONS. STAT. § 3304 (a)(5). A person can be arrested and charged with disorderly conduct if there is probable cause to believe that he or she,

10

"with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," "(1) engage[d] in fighting or threatening, or in violent or tumultuous behavior; (2) ma[de] unreasonable noise; (3) use[d] obscene language, or ma[de] an obscene gesture; or (4) create[d] a hazardous or physically offensive condition by any act which serve[d] no legitimate purpose of the actor." *See* 18 PA. CONS. STAT. § 5503(a). Thus, in order for the officers to validly arrest Washington, they would have had to believe that he either intentionally damaged the bus or intentionally disturbed other passengers or Browne. *See* 18 PA. CONS. STAT. §§ 3304(a)(5), 5503(a).

Although Washington does not (and cannot) know precisely what Browne communicated to the police, it is reasonable to infer that Washington either stated that Browne had committed a crime, suggested to the police that Washington had intentionally caused property damage or a disturbance or omitted facts from which the officers might have concluded that Washington had, in fact, *not* intended to cause either property damage or a disturbance.

Washington contends that Browne knew the information he furnished to the police was false or misleading because Browne knew that any contact Washington had with the bus was accidental and that Washington had not intended to create a disturbance, but was merely trying to exit the bus because of Browne's harassment. (Compl. ¶¶ 23, 34, 41.) Finally, Browne claims that Washington's false allegations triggered, and formed the sole basis of, the prosecution against him. Washington has therefore sufficiently alleged that Browne initiated the proceedings against him. *See Vanderklok*, 2016 WL 4366976, at *10 ("Vanderklok similarly would not have been

11

prosecuted but for Kieser's alleged fabrication."); *Brockington*, 354 F. Supp. 2d at 570 n.6.

Browne cites *Boseman v. Upper Providence Twp.*, No. 15-2332, 2016 WL 344460, at *8 (E.D. Pa. Jan. 28, 2016), *aff'd in part, vacated in part*, 16-1338, 2017 WL 758480 (3d Cir. Feb. 27, 2017), for the proposition that Washington's allegations are conclusory and insufficient to support a claim of malicious prosecution. In *Boseman*, the plaintiff alleged that the defendant police officer had fabricated probable cause for her DUI arrest and lied to the prosecutor. She also claimed that the defendant's information was the only source of information the prosecutor relied on. *Id.* at *8. The record in that case showed that the defendant officer alone had stopped the plaintiff's vehicle, arrested her for DUI and prepared the police paperwork in support of the arrest, in which he described his encounter with her and his basis for concluding that she was intoxicated. *Id.* at *1–2. The record also showed that the defendant was the only inculpatory witness who testified at the plaintiff's trial. *Id.* at *2. The court nevertheless dismissed the plaintiff's allegations as conclusory, explaining that the plaintiff failed to identify what information was allegedly fabricated or "point to any factual averments for her contention that the only source of information the prosecutor relied on in the charging decision was [the Defendant]." *Id.* *7–8. The court continued: "the fact that Defendant Reynolds was the only inculpatory witness who testified at Plaintiff's trial does not mean that he was actually the only person who provided information that led to the decision to prosecute Plaintiff." *Id.* at *8.

The Third Circuit Court of Appeals disagreed with the district court on this point. *See Boseman v. Upper Providence Twp.*, No. 16-1338, — F. App'x —, 2017 WL

758480, at *3 (3d Cir. Feb. 27, 2017) ("We will assume that Boseman satisfied the first prong, which requires that Reynolds 'initiated' the criminal proceeding against her. Reynolds was the arresting officer and the only inculpatory witness at Boseman's criminal trial. Presumably, but for Reynolds' arrest and report, Boseman would not have been charged."); *see also Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party."); *Vanderklok*, 2016 WL 4366976, at *10 ("Although Kieser argues that Detective Wojciechowski conducted an independent investigation and that he, along with the District Attorney's Office, made the decision to charge Vanderklok, those decisions cannot be divorced from Kieser's purportedly false allegation. Without any eye witnesses corroborating Kieser's version of events or any other evidence suggesting that Vanderklok made a statement about bringing a bomb into the airport, Wojciechowski and the prosecutor could not have based their decision on anything other than Kieser's version of events."); *Brockington*, 354 F. Supp. 2d at 570 n.6 ("Although this is not specifically alleged by Brockington, when all reasonable inferences are drawn in favor of Brockington, one can infer that the only basis for the prosecution could have been a statement by Shakoor, who was the key witness, and possibly the only witness to the conversation aside from Brockington. . . . Shakoor presumably provided the same information to the prosecutor that she testified to at trial. Therefore, there is a material issue of fact as to whether the criminal proceeding was initiated on the basis of Shakoor's knowingly false statements.").

Likewise here, since the police officers were not on the bus and did not themselves witness Washington's conduct, the only basis for a finding of probable cause, by either the officers or the charging prosecutor, would have been Browne's (or some other eyewitness's) account of what occurred on the bus. Taking Washington's allegations as true, the officers arrested Washington at Browne's direction and based solely on his account of Washington's conduct. Moreover, nothing that has been alleged suggests that any other passengers or eyewitnesses contacted the officers or the prosecutor or in any way suggested that Washington had committed a crime. In fact, Washington contends that numerous bus passengers told the police that Washington had not done anything wrong and that there was no reason to arrest him. *See* (Compl. ¶ 37). These facts, along with Washington's allegation that Browne was the only inculpatory witness called at his preliminary hearing, support the reasonable inference that the proceedings were initiated solely on the basis of Browne's allegedly false or misleading statements to the police.

**ii.**

Second, Washington must show that the criminal proceeding ended in his favor. *Johnson*, 477 F.3d at 81–82. Because all of the charges against him were dropped at the November 4, 2015 preliminary hearing, he satisfies this element. *See Simmons v. Poltrone*, No. 96-8659, 1997 WL 805093, at *6 (E.D. Pa. Dec. 17, 1997) ("That the charges were dropped by the Commonwealth for lack of evidence establishes that proceedings terminated in favor of the plaintiff.").

**iii.**

Next, Washington must allege that Browne initiated the proceeding without probable cause. *Johnson*, 477 F.3d at 81–82. Irrespective of whether the police may have acted on the reasonable belief that they had probable cause to arrest Washington, whether Browne had probable cause to contact the police and pursue Washington's prosecution is an independent inquiry. *See Merkle*, 211 F.3d at 794–95; *see also Vanderklok*, 2016 WL 4366976, at *11 ("Indeed, it would make little sense to shield a defendant from a malicious prosecution claim because the facts he fabricated gave others probable cause to arrest and file criminal charges.").

"Probable cause exists when 'the facts and circumstances within the [defendant's] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" *Stetser v. Jinks*, 572 F. App'x 85, 87 (quoting *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). "While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." *Halsey*, 750 F.3d at 299 (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (additional internal citations and quotations omitted)). "Generally, the existence of probable cause is a factual issue." *Id.* at 300.

"Unlike the causation question, a probable cause inquiry is entirely objective. Thus, [the defendant's] view of the evidence is relevant only to the extent it explains what facts were available to him when he made his discretionary decision to initiate the proceedings." *Halsey*, 750 3.Fd at 299 (citation omitted). Here, taking Washington's allegations as true and drawing reasonable inferences in his favor, one could conclude

15

that given the facts available to Browne at the time he initiated the proceeding, he did not have probable cause to believe Washington had committed a crime. Washington contends that Browne knew he was trying to exit the bus out of fear and a desire to escape Browne's harassment rather than a desire to disturb others. If true, Browne could not have reasonably believed that Washington was guilty of "creat[ing] a hazardous or physically offensive condition by" engaging in an "act which serves no legitimate purpose of the actor". . . "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." *See* 18 PA. CONS. STAT. § 5503(a). Washington also contends that Browne knew that any damage to the bus occurred accidentally either as a result of Washington tapping the window to feel his way to the exit or of his being tossed around due to Browne's driving. If true, Browne could not have reasonably believed that Washington was guilty of "intentionally damag[ing] real or personal property of another." *See* 18 PA. CONS. STAT. § 3304(a)(5). If Browne, via his statements to the officers, initiated the criminal proceedings without a reasonable basis for believing that Washington committed any crimes or intended to, he lacked probable cause. Washington's allegations are therefore sufficient with respect to this element. *See Huff v. Cheltenham Twp.*, No. 14-05555, 2015 WL 4041963, at *5 (E.D. Pa. July 1, 2015) (where material details about what happened remained in dispute and court was faced with a he-said-she-said situation, the court could not conclude that probable cause existed as a matter of law).

**iv.**

Fourth, Washington must allege that Browne acted maliciously or for a purpose other than bringing him to justice. *Johnson*, 477 F.3d at 81–82. "Actual malice in the

16

context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Vanderklok*, 2016 WL 4366976, at *12 (quoting *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988), *abrogated on other grounds*, *Albright*, 510 U.S. 266). "Malice may be inferred from the absence of probable cause." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993), *abrogated on other grounds*, *Albright*, 510 U.S. at 266; *see also Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 419 (E.D. Pa. 2014). As discussed *supra* in subsection III.A.iii, Washington has sufficiently alleged that Browne lacked probable cause, from which malice could then be inferred. Moreover, "[d]eliberately concealing or deliberately failing to disclose exculpatory evidence, like 'maliciously tendering false information,' can . . . form the basis for an inference that a [defendant] acted with malice in initiating and maintaining a prosecution." *Vanderklok*, 2016 WL 4366976, at *12 (quoting *Ankele v. Hambrick*, No. 02-4004, 2003 WL 21396862, at *1 n.4 (E.D. Pa. May 12, 2003)). Finally, Washington's allegations allow the Court to infer that Browne may have acted for a number of improper purposes extraneous to bringing Washington to justice, among them his belief that Washington was lying about his disability or a desire to reinforce his authority over passengers. *See* (Compl. ¶¶ 11–20).

### v.

Finally, Washington must allege a "deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." *Johnson*, 477 F.3d at 81–82. Washington was arrested, handcuffed, forcibly searched, taken to the precinct and detained in a jail cell overnight. (Compl. ¶¶ 25–28, 30.) This alone is sufficient. *See*

17

*Black v. Montgomery Cty.*, 835 F.3d 358, 368 (3d Cir. 2016), *as amended* (Sept. 16, 2016) ("A traditional arrest by an officer is a commonly understood type of seizure." (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). Once arraigned and released, Washington faced serious criminal charges and was bound to appear in court at the state's command. (*Id.* ¶¶ 31, 32); s*ee Black*, 835 F.3d at 368 (quoting *Albright*, 510 U.S. at 277, 114 (Ginsburg, J., concurring) ("A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. . . . Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed 'seized' for trial, so long as he is bound to appear in court and answer the state's charges.")). Washington's allegations are sufficient to satisfy the fifth element and his malicious prosecution claim against Browne therefore survives Defendants' motion to dismiss.

## B.

Defendants contend that the claim should nevertheless be dismissed because Browne is entitled to qualified immunity.[5] "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ascolese*, 925 F. Supp. at 361 (internal citation omitted) (denying qualified immunity to a SEPTA physician where a reasonable physician would have known his conduct was illegal); *see also Crockett v. Se.*

---

[5]  Defendants also argue that to the extent Washington asserts his malicious prosecution claim (Count I) against Browne in both his official and individual capacities, the official capacity claim must be dismissed because the real party of interest is SEPTA. (ECF No. 14, at 12; ECF No. 19, at 1.) Nowhere does Washington expressly purport to sue Browne in his official capacity but to the extent that he did attempt to bring such a claim, it could only be brought against SEPTA pursuant to *Monell* and is therefore properly dismissed at this time. *See Spaddy v. Se. Pennsylvania Transp. Auth.*, No. 15-2995, 2016 WL 3914034, at *3 (E.D. Pa. July 20, 2016).

*Pennsylvania Transp. Ass'n*, No. 12-4230, 2013 WL 2983117, at *9 (E.D. Pa. June 14, 2013), *aff'd sub nom. Crockett v. Se. Pennsylvania Transp. Auth.*, 591 F. App'x 65 (3d Cir. 2015) (granting qualified immunity to SEPTA board of directors and managers). "To be clearly established for purposes of the qualified immunity analysis, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right." *Hughes v. Shestakov*, No. 00–6054, 2002 WL 1742666, *4 (E.D. Pa. July 22, 2002) (citing *Karnes v. Skrutski*, 62 F.3d 485, 492 (3d Cir. 1995)).

At the motion to dismiss stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). Taking Washington's allegations as true, Browne violated his clearly established rights and is not, at least at this stage of the proceedings, entitled to a qualified immunity defense. *See, e.g.*, *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 820 (E.D. Pa. 2001) ("It is clear that the Plaintiff has appropriately alleged a constitutional violation; furthermore, the right to be free from the fabrication of evidence, falsifying documents, and malicious prosecution is clearly established.").

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.